[Civ. No. 7636.   Third Dist.   Sept. 19, 1949.]

DANIEL W. GRIMES, Appellant, v. L. B. ALLEN et al.,
Respondents.

F. H. Bowers and R. A. Boon for Appellant.

Al. B. Broyer and Robinson & Robinson for Respondents.

SCHOTTKY, J. pro tem.*—Appellant, Daniel W. Grimes,
a resident of Roseville, in Placer County, commenced an action

*Assigned by Chairman of Judicial Council.

against respondent L. B. Allen, Chief of Police of Roseville, and Katie Allen, his wife, to cancel a deed to plaintiff's home in Roseville, which deed, it was alleged, was obtained by Allen while Grimes was a prisoner of respondent Allen and confined in the city jail of Roseville. The complaint alleged that Grimes' signature to the deed was obtained through duress used by respondent L. B. Allen during Grimes' imprisonment by him; that the consideration for the deed was inadequate; that the transaction was against public policy and void.

Respondents' answer denied that there was any duress or that the consideration was inadequate and alleged that appellant executed the deed freely and voluntarily.

The court adopted findings of fact favorable to the respondent, specifically finding that the allegations of the complaint in regard to appellant's alleged unlawful arrest and confinement were not true and that the respondent L. B. Allen made no threats in order to procure the execution of the deed. In this latter regard, the court found that appellant signed the deed freely and voluntarily, and for adequate consideration. The court also found that appellant was lawfully arrested upon a complaint of a citizen of the commission of a felony, upon which charge he was tried. Judgment was entered that appellant take nothing by his complaint and that respondents acquired title to the property, the judgment declaring that the transaction by which the deed was executed and delivered was free and voluntary and free from fraud, duress, or undue influence on the part of the respondents. This appeal is from the judgment so entered.

The principal ground upon which appellant seeks a reversal of the judgment is that the transaction as a whole is so repugnant to the regular administration of justice that it is against public policy and therefore void.

The record in this case reveals an unusual and somewhat amazing situation. The chief of police and another officer of the city of Roseville arrest appellant upon the oral complaint of a citizen accusing him of a felony, no formal complaint having been filed or any warrant issued, and take him to the city jail of Roseville. The following day, according to respondent chief of police, he and the imprisoned appellant enter into an oral agreement for the purchase by the chief of police of the home of appellant in Roseville. Appellant denies any such agreement. The chief of police procures the description of the property and has one of his subordinate officers go to a real estate office and have a deed drawn conveying the

property of appellant to respondents. The respondent chief of police then arranges with a notary public to come to the jail, and then brings the appellant from his cell into the jail office; the deed is placed before the appellant, and the chief of police states to appellant in the presence of the notary and another police officer that he did not have to sign it if he didn't want to, this statement being repeated to appellant two times more before the deed was finally signed by appellant and delivered by the notary to respondent chief of police, who thereupon handed appellant a check for $1,990, being the difference between the claimed purchase price of $3,468.01 and the balance of the indebtedness owing to the Bank of America upon the property, and takes appellant back to his cell in the city jail. The chief of police then records the deed, takes appellant from the city jail to the property where appellant puts some of his personal belongings into a trunk, and then takes appellant to a bank where appellant deposits the check given him by the chief of police. Then respondent chief of police takes appellant from the city jail of Roseville to the county jail of Placer County at Auburn, a distance of 15 miles.

All of the foregoing happened within the short space of 48 hours, and during that time appellant talked with no one except the officers in the jail, and received no independent advice from anyone. He claims that he made a request for counsel but that it was denied him. Respondent chief of police denies that any such request was made. After appellant reached the county jail he was permitted to see counsel, and thereafter, through his counsel, he made a tender to respondent L. B. Allen of the amount paid by said respondent, and demanded the property back, which demand being refused the instant action was commenced.

Two realtors of Roseville testified that the real property conveyed was of the value of $5,500, and an appraiser, who did not reside there, testified in behalf of respondents that the value thereof was only $3,250. It seems odd that respondents should refuse to give the property back if, as their witness testified, it was worth less than they paid for it. While it has no particular bearing on the decision in this case, it appears from the record that no formal charge was filed against appellant until many days after the deed in question was signed, and that upon the trial the jury disagreed ten to two for acquittal and the charge was dismissed.

Counsel for respondents argue as though this were a trans-

action between persons dealing at arm's length and upon an equal basis. They assert that the transaction was free and voluntary, that the consideration was adequate, and that the findings of the trial court to this effect are supported by the evidence. They assert also that no question of public policy is involved.

Were the transaction here involved the ordinary one where one citizen is seeking to cancel a deed made to another citizen upon the ground of duress or fraud, we would, of course, be compelled to hold that because there was a conflict in the evidence as to these matters we were bound by the findings of the trial court and compelled to affirm the judgment. However, this is not such a transaction, as the record clearly and without contradiction shows. ■■■ We believe that it is against public policy for any chief of police, or police officer, who has a prisoner in his custody under lock and key, to enter into a deal with that prisoner to buy his home or other property, and carry out and complete the transaction while the prisoner is still in his custody, particularly when the prisoner has not had the benefit of independent advice. If public policy permits such a transaction to stand, dire consequences could result to citizens who might be cast into jail upon charges which might or might not be thereafter proved. The impropriety of entering into a business agreement with a prisoner in his custody should immediately suggest itself to a police officer, and he should refrain from entering into such agreement while the prisoner is in his custody. ■■■ A transaction between a police officer and a prisoner cannot be considered free and voluntary under the circumstances that were present in the instant case; and such a transaction, if not wholly void as a matter of public policy, must be considered voidable at the instance of the prisoner. Public confidence in our law enforcement officers would be undermined if such transactions were permitted to stand, because the public would be no more likely to regard such a transaction as free and voluntary on the part of the prisoner than it would some of the confessions that emanate from behind the Iron Curtain. While it may be that respondent chief of police was impelled by proper motives and sincerely believed that he was entering into a fair transaction with the prisoner, we believe that when the purchase price was tendered back to him by appellant with a demand for the return of the property, he should have realized the impropriety of the transaction and have restored the property to appellant.

We have not been cited to any case which deals with this precise situation, nor have we found any. We believe that the reason for this is that the usual result would be a voluntary reconveyance upon demand made by the prisoner. ■ As stated in 21 California Jurisprudence, at page 886:

"The rule has long been recognized that any contract by an officer which interferes with the unbiased discharge of his duty to the public in the exercise of his office, is against public policy and void."

The principles of law which condemn the transaction here involved as being in violation of public policy are elementary, and citation of authority is unnecessary.

■ We, therefore, hold that the transaction in the instant case was contrary to public policy, that appellant was entitled to, and did, rescind it, and was, and is, entitled to have his property restored to him upon tendering to respondents the amount of the purchase price of said property. Appellant is also entitled to the rents, issues and profits of said property during the time it has been held by respondents. Appellant is, of course, also entitled to the return of his personal property, but there is no dispute as to this as respondents state in their brief that appellant may receive delivery of it at his convenience.

The judgment is reversed with directions to the trial court to enter judgment in favor of appellant in accordance with the views herein expressed.

Adams, P. J., and Thompson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 17, 1949.